NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000597
18-NOV-2013
08:00 AM

NOS. CAAP-12-0000597 and CAAP-12-0000718

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


JACQUELINE TAMMAN, Plaintiff-Appellee, v.
SAMI TAMMAN, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DIVORCE NO. 07-1-1120)

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

Defendant-Appellant Sami Tamman (Sami) appeals from the May 25, 2012 "Judgment for Delinquent Child Support And Alimony" (May Judgment) entered in the Family Court of the First Circuit[1] (family court) in No. CAAP-12-0000597. Subsequently, Sami appealed the family court's July 31, 2012 "Findings And Judgment Of Civil Contempt Of Court" (July Findings/Judgment) in No. CAAP-12-0000718. These two appeals were consolidated under No. CAAP 12-0000597 by order of this court entered November 9, 2012.

On appeal, Sami contends the family court erred by: (1) entering the May Judgment against him for payment of sums in the amount of $420,338 while the matter was still under appeal; and (2) finding Sami in civil contempt without clear and convincing evidence of his current ability to pay in satisfaction of the July Findings/Judgment.

_____

[1] The Honorable Catherine H. Remigio presided unless otherwise noted.

## I.   BACKGROUND

Sami and Plaintiff-Appellee Jacqueline Tamman (Jacqueline) were married in Brazil May 25, 1983.  Sami is a Sudanese native with Swiss citizenship.  Jacqueline is a Brazilian native with Brazilian and Swiss citizenship.  The parties had four children during their marriage: Alexander (born October 25, 1999 in Switzerland), Vanessa (born February 22, 2001 in Switzerland), Nathalie (born December 26, 2002 in Honolulu), and Caroline (born April 8, 2004 in Honolulu).  Alexander and Vanessa hold Swiss citizenship; Nathalie and Caroline hold dual United States and Swiss citizenship.  Jacqueline and the children have legal status to remain in the United States.

Sami and Jacqueline visited Hawai'i in 2001, purchased two leasehold condominiums, and returned to live in 2003.  From July 2003 to December 2006, Sami was present in Hawai'i approximately three months of the year, spending the majority of his time in Switzerland and other places.

On April 5, 2007, Jacqueline filed a complaint for divorce against Sami in family court.  Jacqueline unsuccessfully attempted to serve Sami in Switzerland with a: (1) Complaint for Divorce, (2) Plaintiff's Ex Parte Motion for Immediate Custody, Restraining Order Enjoining Removal of Children, Exclusive Occupancy of Kahala Residence, and/or an Order Shortening Time Hearing on Plaintiff's Motion for Pre-Decree Relief, (3) Motion and Affidavit for Pre-Decree Relief, and (4) Motion for Personal Service Without the State.  10-32 JROA doc 11 at 229-38, 881-82, 877-879, 10-32 JROA doc 19 at 1571

On October 16, 2007, the family court[2] ordered Jacqueline to file a motion to declare service effected pursuant to Tataragasi v. Tataragasi, 477 S.E.2d 239 (N.C. Ct. App. 1996) if Swiss authorities were unable to effect service on Sami by

---

[2]   The Honorable Linda S. Martell presided.

December 5, 2007.  On November 30, 2007, Sami appears to have initiated divorce proceedings in Switzerland.  On December 5, 2007, counsel for Sami made a special appearance to contest jurisdiction and the family court[3] held a hearing on January 2, 2008 on that issue.  Further hearings were held, supplemental briefs were submitted on specific jurisdictional issues, and on September 19, 2008, the family court[4] determined it had subject matter jurisdiction and personal jurisdiction over Sami and Jacqueline.

On December 11, 2008, the Swiss Republic and Canton of Geneva Judiciary Power issued a Swiss divorce decree, granting the divorce but specifically declaring it did not have jurisdiction to rule on matters regarding the children.[5]

On May 10, 11 and 12, 2010, the family court[6] held a trial on child custody, child visitation, and child support. Based on that hearing, on July 8, 2010, the family court entered its "Order Granting Custody, Visitation, And Support" (Custody/Support Order) and its Findings of Fact and Conclusions of Law (FOFs/COLs) in support of its Custody/Support Order.

The family court[7] acknowledged the validity of the Swiss divorce decree in its FOFs/COLs.

> 4.    On December 11, 2008, a divorce Decree was issued in Switzerland.  The order dissolved the 25-year marriage of Plaintiff and Defendant.

On July 19, 2010, Sami filed a Hawaiʻi Family Court (HFCR) Rule 59 "Motion For Reconsideration Of Order Entered On July 8, 2010 Or In The Alternative Motion For New Trial And/Or

_____

[3]  The Honorable Kenneth E. Enright presided.

[4]  The Honorable Kenneth E. Enright presided.

[5]  On March 13, 2009, Jacqueline filed a motion to bifurcate the divorce proceedings and to order Sami to cease the Swiss divorce proceedings.

[6]  The Honorable Sabrina McKenna presided.

[7]  The Honorable Sabrina McKenna presided.

Reopening Of The Hearing" (Motion for Reconsideration). On September 7, 2010, the family court denied the substance of Sami's Motion for Reconsideration.[8]

On September 20, 2010, Sami filed a notice of appeal under No. CAAP-10-0000032 from the family court's order denying his Motion for Reconsideration. On November 29, 2011, this court entered a Summary Disposition Order (SDO) dismissing Sami's appeal.[9] Sami filed a writ of certiorari to the Hawaiʻi Supreme Court, who subsequently issued its own SDO on March 28, 2012.[10] The supreme court's SDO concluded this court erred by restricting its review to the family court's September 7, 2010 order denying Sami's Motion for Reconsideration and by not considering the underlying Custody/Support Order. The case was remanded to this court. On April 27, 2012, this court issued another SDO in reconsideration the family court's September 7, 2010 order denying Sami's Motion for Reconsideration together with the Custody/Support Order. On June 8, 2012, Sami filed a writ of certiorari to the supreme court, which was denied on August 9, 2012. See Tamman v. Tamman, No. CAAP-10-0000032, 2012 WL 1473426 (App. April 27, 2012) (SDO), (cert. denied, SCWC-10-0000032, 2012 WL 3240753, at *1 (Haw. Aug. 9, 2012).

On May 21 and 22, 2012, the family court held a hearing on Jacqueline's Motion and Affidavit for Post Decree Relief filed November 21, 2011. The family court found that Sami owed Jacqueline $420,338 in child support and alimony arrearages through April 2012.

---

[8]  The family court's order denying Sami's Motion for Reconsideration granted the motion in part to correct a clerical error in the Custody/Support Order by adding the words "As allowed by law" to the beginning of paragraph 10 regarding continuing jurisdiction of the family court. In all other respects, the Motion for Reconsideration was denied.

[9]  This court entered its final judgment on appeal on December 15, 2011.

[10]  The Hawaiʻi Supreme Court entered its final judgment on appeal on April 25, 2012.

Sami's most recent Income and Expense Statement, filed January 31, 2012, states his gross pay per month is $8,473 and his net monthly pay is $5,762. He reports expenses in the amount of $13,551 and a monthly deficiency of (-)$7,789. Sami's Asset and Debt Statement, shows a balance of $14,510 from three banks and nine properties, four titled in Sami's name and five with disputed titles. The reported net value of all of Sami's assets and debts is $1,421,096.

On May 25, 2012, the family court entered its May Judgment, which is at issue in this appeal. On November 26, 2012, the family court filed its FOFs/COLs, from the May 21 and 22, 2012 hearings, which affirmed findings supporting its Custody/Support Order. The family court's FOFs/COLs included the following findings:

> 2. The [Custody/Support Order] found, in part, that [Sami] owed [Jacqueline] child support arrearages totaling $261.080.00 from April 5, 2007 through May 31, 2010. [Sami] was ordered to pay [Jacqueline] $261,080.00 by August 7, 2010.
>
> 3. The [Custody/Support] Order found [Sami] owed [Jacqueline] temporary alimony arrearages totaling $39.060.00 from April 5, 2007 through December 11, 2008. [Sami] was ordered to pay [Jacqueline] $39,060.00 by August 7, 2010.
>
> 4. The [Custody/Support] Order also required [Sami] to pay child support in the amount of $7,810.00 per month for the four (4) minor children, commencing June 1, 2010.
>
> 5. On July 8, 2010, Justice McKenna also issued [FOFs/COLs] regarding her [Custody/Support] Order. Justice McKenna's Findings and Conclusions stated, in part:
>
> > a. [Sami] possessed the means to comply with the [family court's] child support, alimony, and housing orders. Nevertheless, [Sami] intentionally and inexcusably ignored the [family] court's orders; (FOF103)
> >
> > b. [Sami's] failure to comply with the [family court's] child support, alimony, and housing orders operated to the detriment of his children's best interests. (FOF 104)
> >
> > . . . .
> >
> > d. In considering [Sami's] demeanor, manner of testifying, and candor, in addition to the substance of his testimony the [family court] finds that [Sami] was

5

not credible. (FOF 107)

    e.   [Sami] deceived the [family court], inter alia, with respect to his financial status and position. [Sami] intentionally misrepresented his income on his Income and Expense statement. [Sami] also misrepresented his assets and debts on his Asset and Debt statement. (FOF 108)

    f.   [Sami] has ownership interests in the Hotel Churchill and Hotel Century, located in Geneva, Switzerland. (FOF 111)

    g.   [Sami] recently transferred real property holdings in his name to his mother. [Sami's] actions were designed to conceal the true state of his financial situation. (FOF 112)

. . . .

7. On September 29, 2010, [Sami] filed his Notice of Appeal regarding the [Custody/Support] Order. [Sami] did not seek a stay of enforcement and did not post a bond.

8. On October 25, 2010, the Honorable Paul T. Murakami entered Orders, inter alia, reaffirming Justice McKenna's monthly child support Order of $7,810.00, and ordering that "[Sami] shall comply with all provisions contained in the [Custody/Support Order]".

9. On November 21, 2011, [Jacqueline] filed her Motion and Affidavit for Post-Decree Relief . . . requesting enforcement relief as follows:

    A.   That [Sami] pay current child support of $7,810.00 per month,

    B.   That [Sami] pay child support arrearages of $356,314.00,

    C.   That [Sami] pay alimony arrearages of $39,060.00,

    D.   That [Sami] pay her attorneys fees and costs, and

    E.   That the [family court] find [Sami] in contempt of court.

. . . .

14. [Sami] has made no payments towards the $261,080.00 child support arrearage amount ordered by Justice McKenna in her [Custody/Support] Order.

15. [Sami] has made no payments towards the $39,060.00 alimony arrearage amount ordered by Justice McKenna in her [Custody/Support] Order.

16. From June 2010 through April 2012, [Sami] owed child support of $7,810.00 per month, for a total of $179,630.00.

17. [Sami] did not pay any child support for the months of

June, July, August, and September of 2010.

18. From October 2010 through April 2012, [Sami] only paid $3,128.00 per month in child support, for a total of $59,432.00.

19. [Sami's] child support arrearage from June 2010 through April 2012 is $120,198.00.

20. [Sami's] child support arrearage from April 2007 through April 2012 is $381,278.00.

21. [Sami's] total child support and alimony arrearage, as of April 2012, is $420,338.00.

22. [Sami] owns a residence in Geneva Switzerland in part of a 7-bedroom, 5-bathroom house, with a net value of $1.3-$1.5 million dollars - or higher.

23. [Sami] claimed the Geneva property was tied up in litigation with [Jacqueline], but he also admitted that his whole objective is to preserve this asset for the children - therefore not as a source to pay his child and spousal support obligation.

24. [Sami] is motivated to prevent [Jacqueline] from having any part of the Geneva property, and will keep the property tied up in litigation as long as possible to achieve this goal.

25. [Sami] has property in Brazil with a net value of $1.1 million.

26. [Sami] owns five (5) other real properties with market values ranging from $368,000.00 to $1.65 million.

27. [Sami] operates the Best Western Diplomat Hotel, and the building is under his name.

28. [Sami] is a director of the Hotel Churchill.

29. [Sami] has a gross monthly income of at least $8,473.00.

30. In considering [Sami's] demeanor, manner of testifying, and candor, in addition to the substance of his testimony, the [family court] finds that [Sami] was not credible about his income and assets.

31. [Sami] conceded that [Jacqueline] could have gotten a Judgment for Justice McKenna's [Custody/Support] Order at any time, even while the Order was on appeal.

The family court concluded it had jurisdiction over the parties and the case and that Sami owed $420,338 to Jacqueline for child support and alimony, including arrearages.

On July 30, 2012, the family court held a hearing on the issue of Sami's civil contempt and entered an order based on

7

its findings. The family court issued its July Findings/Judgment on July 31, 2012 finding:

1. [Sami] was ordered to pay child support and alimony, and obtain life insurance as security for his child support obligation. Delinquent child support and alimony arrears up through April 30, 2012 have been reduced to a judgment of $420,338.00.

2. [Sami] presently has the ability and power to comply with the court order.

3. [Sami] is presently refusing to comply with the order.

4. [Sami] does not have the privilege, right or lawful basis to refuse to comply.

Therefore, [Sami] is in civil contempt of court in violation of [Hawaii Revised Statutes §] 710-1077(6) [(1993)].

The family court ordered Sami to: (1) satisfy half the judgment of $420,338 immediately; (2) the other half within the next six months; and (3) to obtain a life insurance policy that includes benefits for his children.

On August 15, 2012, Sami filed a notice of appeal from the family court's July Findings/Judgment to this court.

## II.  STANDARD OF REVIEW

### A.  Family Court Decisions

Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)).

"Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." Ek v. Boggs, 102 Hawai'i 289, 294-95, 75 P.3d 1180, 1185-86 (2003) (internal quotation marks, citation, and brackets omitted).

8

### B. Family Court Findings of Fact (FOFs) and Conclusions of Law (COLs)

The family court's FOFs are reviewed on appeal under the 'clearly erroneous' standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. 'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are not binding upon an appellate court and [are] freely reviewable for [their] correctness.

. . . .

Moreover, the family court is given much leeway in its examination of the reports concerning [a child's] care, custody[,] and welfare, and its conclusions [in this regard], if supported by the record and not clearly erroneous, must stand on appeal.

In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (citations, internal quotation marks, and ellipses omitted).

### C. Jurisdiction in Civil Matters

"The existence of jurisdiction is a question of law that [the appellate court reviews] de novo under the right/wrong standard." Captain Andy's Sailing, Inc., v. Dep't of Land and Natural Resources, State of Hawaiʻi, 113 Hawaiʻi 184, 192, 150 P.3d 833, 841 (2006) (internal quotation marks and citation omitted).

### D. Civil Contempt Orders

The appellate court reviews "civil contempt orders under the abuse of discretion standard. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Wahba, LLC v. USRP (Don), LLC, 106 Hawaiʻi 466, 472, 106 P.3d 1109, 1115 (2005) (internal quotation marks and citations omitted).

### III. DISCUSSION

Sami contends the family court lacked jurisdiction to issue its May Judgment and underlying orders because they concerned matters that were pending under appeal. See Tamman v. Tamman, No. CAAP-10-0000032, 2012 WL 1473426 (App. April 27, 2012) (SDO), (cert. denied, SCWC-10-0000032, 2012 WL 3240753, at *1 (Haw. Aug. 9, 2012). "[O]nce a party files a notice of appeal, the lower court is generally divested of jurisdiction to proceed further on the matter. . . . [H]owever, the family court retains jurisdiction to enforce its own judgments and decrees." Kakinami v. Kakinami, 127 Hawai'i 126, 143, 276 P.3d 695, 712 (2012) citation omitted).

The family court's May Judgment and July Findings/ Judgment were issued to support the prior Custody/Support Order compelling Sami to pay Jacqueline $7,810 per month in child support, arrearages dating back to April 5, 2007, temporary alimony arrearages, and interest.

Sami argues the family court's May Judgment did not merely enforce the monetary portions of the Custody/Support Order, but "modified them to create new amounts and thus new orders." The family court's FOFs/COLs, upon which the May Judgment was based, make clear the "new amounts" Sami owed to Jacqueline represent updated arrearages for the approximately two year period during which Sami remained in non-compliance with the Custody/Support Order.

The family court ordered Sami to pay $7,810 a month in child support, the same amount quoted in the Custody/Support Order. The family court's $420,338 figure is consistent with its findings that Sami: (1) had made no payments towards the $39,060 owed in alimony arrearages; (2) owed $7,810 per month in child support for the months between June 2010 and April 2012, totaling $179,630; (3) had paid only $3,128 per month in child support for the months between October 2010 and April 2012,

10

totaling $59,432; and (4) owed child support arrearages from April 2007 through April 2012 in the amount of $381,278. In turn, the family court's findings were supported by the record, including a Certification of Account Balance dated May 16, 2012, from the State of Hawai'i Child Support Enforcement Agency (CSEA) reflecting a balance owed of $420,338. The record also contains CSEA's Month to Month Transaction Summary reflects child support and spousal support arrearages as of May 2010 in the amounts of $261,080 and $39,060 respectively. The family court's May Judgment did not represent "new orders" or modified orders as alleged by Sami. Accordingly, the family court did not lack jurisdiction to enforce its prior orders through its May Judgment or conclude that Sami owed child support and alimony arrearage as of April 2012 in the amount of $420,338. See Kakinami, 127 Hawai'i at 143, 276 P.3d at 712 (after a party files a notice of appeal, "the family court retains jurisdiction to enforce its own judgments and decrees.").

Sami also contends the family court erred by finding him in civil contempt without clear and convincing evidence of his current ability to satisfy the $420,338 judgment against him. Citing the July Findings/Judgment, Sami argues the family court's reliance on its Custody/Support Order is evidence the proceedings lack "any new evidence regarding [Sami's] current 2012 ability to pay the amounts ordered by Judge McKenna." (Emphasis added.) Sami both misstates the burden of proof in a finding of civil contempt and fails to establish error on the part of the family court.

The family court may "[e]nforce decrees and judgments and punish contempts according to law[.]" Hawaii Revised Statutes (HRS) § 571-8.5(a)(6) (2006 Repl.); see also HRS § 710-1077(6) (Supp. 2012) ("When the contempt consists of the refusal to perform an act which the contemnor has the power to perform,

the contemnor may be imprisoned until the contemnor has performed it.") Further,

> [w]hen a court of competent jurisdiction issues an order compelling a parent to furnish support, including child support, medical support, or other remedial care, for the parent's child, it shall constitute prima facie evidence of a civil contempt of court upon proof that:
>
> > (1) The order was made, filed, and served on the parent or proof that the parent was present in court at the time the order was pronounced; and
> >
> > (2) The parent did not comply with the order.

HRS § 710-1077(6)(1) and (2), see also HRS § 571-81(b)(1) and (2) (Supp. 2012).

Sami has not disputed that the family court had prima facie evidence of his civil contempt of court. Alvarez Family Trust v. Ass'n of Apartment Owners of Kaanapali Alii, 121 Hawai'i 474, 488, 221 P.3d 452, 466 (2009) ("It is well-established in this jurisdiction that, where a party does not raise specific issues on appeal to [this court] or on application to [the Hawai'i Supreme Court], the issues are deemed waived and need not be considered.").

Against the family court's prima facie evidence of civil contempt, Sami had the burden of establishing that he was unable to comply with the family court's orders to pay support. Chan v. Chan, 7 Haw. App. 122, 128, 748 P.2d 807, 811 (1987) (where wife established a prima facie case of civil contempt, husband failed to satisfy his burden of producing evidence to support his alleged present inability to comply with an order to turn over his coin collection). Sami misstates this burden of producing evidence by presuming that Jacqueline was required to proffer evidence regarding his current 2012 ability to pay the order. "In a civil contempt proceeding such as this, of course, a defendant may assert a *present* inability to comply with the order in question. It is settled, however, that in raising this defense, the defendant has a burden of production." Chan, 7 Haw.

12

App. at 127-28, 748 P.2d at 810 (citing <u>United States v. Rylander</u>, 460 U.S. 752, 757 (1983)) (ellipses omitted).

The family court's July Findings/Judgment included a specific finding that Sami had the ability to comply with its order. The only evidence Sami cited in support of his contention that he currently lacked the ability to comply with the family court orders was his own testimony on July 30, 2012. At this hearing, Sami stated in relevant part that: (1) he adopted all of the statements made by his counsel, including counsel's statement that "all the properties [of Sami] are tied up in litigation right now[,]" (2) Jacqueline's sister has prevented him from selling a property in Rio de Janeiro from which he could obtain $400,000, and (3) the family court's finding that Sami's income is $25,000 per month is inaccurate.

This court does not pass upon the question of whether Sami's testimony constitutes credible evidence of his inability to comply with the family court's orders. <u>In re Doe</u>, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001) ("it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact.") (internal quotation marks and brackets omitted). The family court found Sami was not credible about his income and assets. The family court "[i]n considering [Sami's] demeanor, manner of testifying, and candor, in addition to the substance of his testimony, the [family court] finds that [Sami] was not credible about his income and assets."

Sami contends the family court's finding that he has an ability to pay cannot rely on his Asset and Debt Statement, which shows a net value of all of Sami's assets and debts as $1,421,096. Sami argues the main undisputed asset constituting that net value is a Rio de Janeiro house valued at $1.1 million and he testified that this property "was tied up in litigation with [Jacqueline's] sister." The family court's FOFs/COLs

13

includes the following finding: "[Sami] also misrepresented his assets and debts on his Asset and Debt statement." Sami's assertion that his $1.1 million asset cannot be used to satisfy the $420,338 judgment against him is exclusively supported by his own testimony and representations regarding his financial assets, which the family court determined were not credible. Accordingly, the family court did not abuse its discretion in concluding that "[Sami] possesses the means to comply with the [family court's] child support and alimony order."

## IV. CONCLUSION

Therefore, we affirm the Family Court of the First Circuit's May 25, 2012 "Judgment for Delinquent Child Support And Alimony" and the July 31, 2012 "Findings And Judgment Of Civil Contempt Of Court."

DATED: Honolulu, Hawai'i, November 18, 2013.

On the briefs:

Samuel P. King, Jr.
for Defendant-Appellant.

Ronald Y. Amemiya
Jonathan W. Ware, pro hac vice
(Freshfields Bruckhaus
Deringer US LLP)
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge